**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CASA TRADICIÓN S.A. de C.V. | |
| Plaintiff, | |
| v. | Case No. 4:22-cv-02972 |
| CASA AZUL SPIRITS, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE
EXPERT REPORT AND OPINIONS OF MATTHEW G. EZELL**

## <u>TABLE OF CONTENTS</u>

I.  **PRELIMINARY STATEMENT** ................................................................................... 1

II.  **BACKGROUND** ................................................................................................... 1

III.  **LEGAL STANDARD** ........................................................................................... 3

IV.  **ARGUMENT** ........................................................................................................ 4

    A.  <u>*Eveready* Surveys are Widely Accepted by Courts and Ezell Properly Adopted the *Eveready* Methodology in This Case.</u> ........................................................................... 4

    B.  <u>Plaintiff's Other Criticisms Are Meritless, and Provide No Basis to Exclude the Ezell Surveys.</u> ........................................................................................................ 8

       1.  *Survey participants need not be aware of the senior user's brand and be able to identify the brand from memory for an Eveready survey to be effective and capture marketplace realities.* ........................................................................................... 8

       2.  *The Ezell Surveys properly asked respondents about "brands" due to the nature of the case.* ......................................................................................... 11

       3.  *The Ezell Surveys did not need to ask respondents to explain why they did not know answers to questions.* ...................................................................... 13

       4.  *The Canned Product Survey sampled a proper universe.* ........................... 15

V.  **CONCLUSION** ................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*American Home Prods. Corp. v. Procter & Gamble Co*.,
 871 F. Supp. 739 (D.N.J. 1994) ..................................................................13

*Bailon v. Landstar Ranger, Inc.*,
 No. 3:16-CV-1022-L, 2019 WL 4741795 (N.D. Tex. Sept. 27, 2019)....................8

*Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys.*
 *and Its Member Insts. v. Houston Coll. of L., Inc.*,
 214 F. Supp. 3d 573 (S.D. Tex. 2016) ......................................................5

*Bimbo Bakeries USA, Inc. v. Sycamore*,
 No. 2:13-CV-00749, 2017 WL 1377991 (D. Utah Mar. 2, 2017) ...........................5

*Citigroup Inc. v. AT&T Servs., Inc.*,
 16-cv-4333 KBF, 2016 WL 4362206 (S.D.N.Y. Aug. 11, 2016)...........................7

*Coty Inc. v. Excell Brands, LLC*,
 277 F. Supp. 3d 425 (S.D.N.Y. 2017)......................................................5

*Cumberland Packing Corp. v. Monsanto Co*.,
 32 F. Supp. 2d 561 (E.D.N.Y. 1999) ......................................................10

*Daubert v. Merrell Dow Pharms. Inc*,
 509 U.S. 579 (1993)........................................................................3

*E & J Gallo Winery v. Proximo Spirits, Inc.*,
 No. 1:10-CV-00411 LJO, 2011 WL 5922090 (E.D. Cal. Nov. 28, 2011)...............13

*Fancaster, Inc. v. Comcast Corp.*,
 832 F. Supp. 2d 380 (D.N.J. 2011) ........................................................5

*Fiji Water Co. v. Fiji Mineral Water USA, LLC*,
 741 F. Supp. 2d 1165 (C.D. Cal. 2010) ..................................................6

*Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*,
 Civil Action No. 3:17-CV-2719-B,
 2019 WL 3957846 (N.D. Tex. Aug. 21, 2019)..........................................4

*Gen. Motors Co. v. Urban Gorilla*, LLC,
 No. 2:06-CV-00133, 2010 WL 5395065 (D. Utah Dec. 27, 2010) .........................5

*Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*,
 243 F. Supp. 2d 605 (W.D. Tex. 2001)....................................................3

*Great Am. Rest. Co. v. Domino's Pizza LLC*,
No. 4:07CV52, 2008 WL 7440300 (E.D. Tex. Apr. 21, 2008) ...............................................9

*Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*,
327 F. Supp. 3d 979 (N.D. Tex. 2018) ...............................................................................3, 16

*Herman Miller, Inc. v. Belnick LLC*,
No. 1:18-cv-05012-WMR, 2021 WL 2582547 (N.D. Ga. Jan. 11, 2021) .................................9

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer*
*Pharms., Inc.*,
19 F.3d 125 (3d Cir. 1994)......................................................................................................14

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).................................................................................................................3

*Lontex Corp. v. Nike, Inc.*,
No. CV 18-5623, 2021 WL 1145904 (E.D. Pa. Mar. 25, 2021) ...........................................12

*Ltd. v. Macy's Merch. Grp. Inc.*,
15-CV-3645 KMW, 2016 WL 4094913 (S.D.N.Y. Aug. 2,2016),
*aff'd sub nom.*, 695 F. App'x. 633 (2d Cir. 2017) ...................................................................7

*Masterfoods USA v. Arcor USA, Inc.*,
230 F.Supp.2d 302 (W.D.N.Y. 2002) ...................................................................................13

*MGA Ent., Inc. v. Harris*,
No. 2:20-cv-11548-JVS, 2022 WL 3013218 ...........................................................................9

*Orgain, Inc. v. N. Innovations Holding Corp.*,
No. 818CV01253JLSADS, 2022 WL 2189648 (C.D. Cal. Jan. 28, 2022)..............................12

*Sandifer v. Hoyt Archery, Inc.*,
907 F.3d 802 (5th Cir. 2018) ..................................................................................................3

*Scott Fetzer Co. v. House of Vacuums Inc.*,
381 F.3d 477 (5th Cir. 2004) ..................................................................................................4

*Starbucks U.S. Brands, LLC v. Ruben*,
No. 78120060, 2006 WL 402564 (T.T.A.B. 2006) ..................................................................5

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
987 F. Supp. 2d 1023 (C.D. Cal. 2013) ..................................................................................6

*THOIP v. Walt Disney Co.*,
690 F. Supp. 2d 218 (S.D.N.Y. 2010)..................................................................................2, 13

*TravelPass Grp., LLC v. Caesars Ent. Corp.*,
  No. 5:18-CV-153-RWS-CMC, 2021 WL 6334670 (E.D. Tex. Sept. 29, 2021)..................4, 15

*Union Carbide Corp. v. Ever-Ready Inc.*,
  531 F.2d 366 (7th Cir. 1976) ............................................................................................11, 12

*Viacom Int'l v. IJR Cap. Invs, LLC*,
  891 F.3d 178 (5th Cir. 2018) ......................................................................................................5

*WIZKIDS/NECA, LLC v. TIII Ventures, LLC*,
  17-CV-2400 (RA), 2019 WL 1454666 (S.D.N.Y. Mar. 31, 2019)..........................................7

*Wreal, LLC. v. Amazon.com, Inc.*,
  No. 1:14-CV-21385, 2016 WL 8793317 (S.D. Fla. Jan. 7, 2016)............................................5

**Other Authorities**

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
  (5th ed. 2023) ......................................................................................................1, 2, 7, 9, 11

Fed. R. Evid. 702 ......................................................................................................................3, 4, 8

Hal Poret, *An Empirical Assessment of the Eveready Survey's Ability to Detect
  Significant Confusion in Cases of Senior Marks That Are Not Top of Mind*,
  109 Trademark Rptr. 935 (2019) ..........................................................................................6, 8

Defendant Casa Azul Spirits, LLC ("Defendant"), respectfully submits this opposition to Plaintiff Casa Tradición S.A. de C.V.'s ("Plaintiff") motion to exclude the expert report and testimony of Defendant's survey expert Matthew G. Ezell ("Ezell") ("Plaintiff's Motion").  *See* Dkt. 94.

## I.    PRELIMINARY STATEMENT

Ezell's survey work demonstrating that confusion is not likely between Plaintiff's CLASE AZUL and Defendant's CASA AZUL products was previously accepted and credited by this Court when it denied Plaintiff's motion for a preliminary injunction.  Ezell's surveys implemented the widely accepted, "gold standard" *Eveready* methodology, and easily pass the standard for admissibility set forth in *Daubert*.  Plaintiff does not actually argue (nor could it) that the *Eveready* methodology is not well-accepted or that Ezell did not properly implement it.  Instead, Plaintiff raises arguments, however meritless, that go to weight, not admissibility.  At this stage, it is the Court's role to ascertain whether the proffered survey evidence is rooted in a reliable methodology.  Ezell's surveys easily satisfy that standard.  Accordingly, Plaintiff's motion should be denied.

## II.    BACKGROUND

Ezell designed and fielded two surveys (the "Ezell Surveys")—the "Canned Products Survey" and the "Bottled Products Survey"— to measure the likelihood of confusion between Plaintiff's CLASE AZUL tequila and Defendant's CASA AZUL products.  The *Eveready* survey format shows respondents an image of the Defendant's products and respondents are then asked questions to test whether they are confusing the Defendant's products with any other products or trademarks.  *See* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:174 (5th ed. 2023) ("McCarthy").  Specifically, Ezell followed the regularly accepted

1

*Eveready* survey format, which asks respondents which company or brand puts out the shown product, and follows up with questions designed to gauge whether the respondents think there is any sponsorship, affiliation, or approval with other companies or brands. *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 241 (S.D.N.Y. 2010). *Eveready* surveys, like the Ezell Surveys, are widely considered to be "the gold standard" in likelihood of confusion surveys. *See* McCarthy at § 32:174.

Ezell submitted the Canned Products Survey in connection with Defendant's opposition to Plaintiff's motion for a preliminary injunction. Dkt. 22-8. That survey showed potential consumers an image of the CASA AZUL tequila soda product and asked the regularly accepted *Eveready* questions described above. *See id.* at ¶¶ 20–25, Declaration of Matthew G. Ezell. Less than one percent (0.33%) of those surveyed mentioned Plaintiff's CLASE AZUL product in response to the survey questions, which is powerful evidence that confusion is not likely in the marketplace. *See id.* at ¶ 30.

Plaintiff submitted a rebuttal declaration to the Canned Products Survey from Dr. Isabella Cunningham. *See* Dkt. No. 28-1, Exhibit A, Declaration of Dr. Isabella Cunningham. In her declaration, Dr. Cunningham criticized the Canned Products Survey as "nothing more than a reading test," ¶ 10, "taint[ed]," ¶ 21, and not in "compl[iance] with the standard principles of survey universes for forward confusion Eveready surveys," ¶ 24. The Court found Dr. Cunningham's criticisms to be "unpersuasive" and concluded that the Canned Products Survey was persuasive evidence that Defendant's CASA AZUL tequila soda is not likely to cause confusion with Plaintiff's CLASE AZUL tequila. Dkt. No. 42 at 18, Order Denying Preliminary Injunction. That survey, which already has been accepted by the Court, can hardly be so flawed as to warrant exclusion under *Daubert*.

After the Court denied the preliminary injunction, Ezell mimicked the Canned Products Survey with the Bottled Products Survey, which he designed to assess whether there was a likelihood of confusion between Plaintiff's CLASE AZUL luxury tequila and Defendant's CASA AZUL organic bottled tequila.  Respondents in the Bottled Products Survey were shown an image of Defendant's CASA AZUL organic bottled tequila and then asked the regularly accepted *Eveready* questions described above.  Ex. 1 to Declaration of Jared I. Kagan (Expert Report of Matthew G. Ezell, April 10, 2023 ("Ezell Report")) at ¶ 27.  Like in the Canned Products Survey, the Bottled Products Survey showed "only [a] *de minimis* [level of] confusion," *id.* ¶ 44; only "1.70%[] of survey respondents mistakenly believed that Defendant's tequila product is made or put out by, has the sponsorship or approval of, or has a business affiliation or connection with Plaintiff," *id.* ¶ 8.  Similar to the Canned Products Survey, the results of the Bottled Products Survey are strong evidence that confusion is not likely in the marketplace.  *Id.* ¶¶ 8–9.

## III.    LEGAL STANDARD

 "The Federal Rules of Evidence permit the use of expert testimony when such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 623 (W.D. Tex. 2001); *see* Fed. R. Evid. 702 ("[Expert testimony is admissible if an] expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").  Courts assess the admissibility of expert opinions under the *Daubert* framework. *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018) (citing *Daubert v. Merrell Dow Pharms. Inc*, 509 U.S. 579, 589–95 (1993)).  The offering party shall provide that "(1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Hall Arts*

*Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1001 (N.D. Tex. 2018) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

 Generally, objections to the foundation of an expert's opinion go to its weight instead of its admissibility.  *See* Fed. R. Evid. 702 advisory committee's notes to 2023 amendments ("[O]nce the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.").  Courts in this Circuit have held that "[f]laws in a survey bear on the weight the survey should receive, not the survey's admissibility."  *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, Civil Action No. 3:17-CV-2719-B, 2019 WL 3957846, at *2 (N.D. Tex. Aug. 21, 2019) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 487-88 (5th Cir. 2004)).

## IV. ARGUMENT

 Plaintiff challenges neither Ezell's qualifications nor the relevance of his opinions.  Nor does Plaintiff dispute that Ezell properly implemented the *Eveready* methodology.  Instead, Plaintiff raises a series of meritless criticisms that go to the weight to be afforded to the Ezell Surveys rather than their admissibility.  Those criticisms can be considered by the fact finder at the time of trial, but they provide no basis to exclude the Ezell Surveys (especially given that the Court already accepted the Canned Products Survey when it found that confusion was unlikely at the time it denied Plaintiff's motion for a preliminary injunction).

 A. <u>*Eveready* Surveys are Widely Accepted by Courts and Ezell Properly Adopted the *Eveready* Methodology in This Case.</u>

 Ezell properly implemented a recognized and well-accepted scientific methodology, and Plaintiff does not dispute this.  Courts consider *Eveready* surveys to be reliable and often refer to the *Eveready* methodology as the "gold standard" of trademark surveys.  *See TravelPass Grp.,*

*LLC v. Caesars Ent. Corp.*, No. 5:18-CV-153-RWS-CMC, 2021 WL 6334670, at *3, 10 (E.D. Tex. Sept. 29, 2021) (denying motion to exclude opinion of expert who used "the 'gold standard' *Eveready* format for his survey to measure the likelihood of confusion between [the plaintiff and defendant]" and finding that "[p]laintiffs' criticisms bear at most upon the weight to be afforded [expert's] testimony and not its admissibility); *see also Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. and Its Member Insts. v. Houston Coll. of L., Inc.*, 214 F. Supp. 3d 573, 593 (S.D. Tex. 2016) (accepting results of the "well-accepted *Eveready* methodology"); *Viacom Int'l v. IJR Cap. Invs, LLC*, 891 F.3d 178, 197–98, (5th Cir. 2018) (accepting result from the "widely accepted *Eveready* format").

Courts have adopted the use of the *Eveready* surveys in a wide variety of cases. *See Bd. of Regents*, 214 F. Supp. 3d at 593 (accepting *Eveready* survey proffered by plaintiff); *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 398 (D.N.J. 2011) (accepting *Eveready* survey proffered by defendants); *Bimbo Bakeries USA, Inc. v. Sycamore*, No. 2:13-CV-00749, 2017 WL 1377991, at *4–5 (D. Utah Mar. 2, 2017) (forward confusion); *Wreal, LLC. v. Amazon.com, Inc.*, No. 1:14-CV-21385, 2016 WL 8793317, at *11 (S.D. Fla. Jan. 7, 2016) (reverse confusion); *Gen. Motors Co. v. Urban Gorilla*, LLC, No. 2:06-CV-00133, 2010 WL 5395065 (D. Utah Dec. 27, 2010) (initial-interest confusion); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 442, 449–50 (S.D.N.Y. 2017) (post-sale confusion); *see also Starbucks U.S. Brands, LLC v. Ruben*, No. 78120060, 2006 WL 402564, at *11 (T.T.A.B. 2006) (TTAB finding, in a registration contest, that *Eveready* surveys are reliable to measure confusion).

This Court previously rejected Plaintiff's criticisms of the *Eveready* methodology, accepted the results from Ezell's Canned Products Survey, and found the survey to be reliable and persuasive evidence that there is no likelihood of confusion between Plaintiff's CLASE

AZUL tequila and Defendant's CASA AZUL tequila soda.  *See* Dkt. No. 42 at 11–12, Order

Denying Preliminary Injunction.  Ezell subsequently adopted the same *Eveready* methodology in

the Bottled Products Survey to show that confusion between Plaintiff's CLASE AZUL tequila

and Defendant's CASA AZUL tequila is not likely.

Contrary to Plaintiff's argument, Pl.'s Mot. at 11, the *Eveready* format is appropriate for

measuring likelihood of confusion regardless of whether the Plaintiff's trademark is strong or

weak.  *See Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1179 (C.D.

Cal. 2010) (crediting *Eveready* survey where plaintiff's mark was commercially strong and well-

known); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1045 (C.D. Cal. 2013)

(crediting *Eveready* survey where plaintiff's mark was commercially weak and not well-known);

*see also* infra § IV.B.1.

Putting aside the contradiction between Plaintiff's allegations throughout this case that its

CLASE AZUL mark is famous and well-known[1] and its new arguments on this motion that its

CLASE AZUL mark is "unfamiliar" to consumers, "the proposition that there must *always* be

consumer awareness of a senior mark for an Eveready survey to accurately assess whether

confusion is likely to occur in the actual marketplace is objectively unsupportable."  Ex. 2 to

Declaration of Jared I. Kagan (Hal Poret, *An Empirical Assessment of the Eveready Survey's*

*Ability to Detect Significant Confusion in Cases of Senior Marks That Are Not Top of Mind*, 109

---

[1]     *See* Amended Compl. ¶ 7 ("Plaintiff produces a world renown [sic] premium tequila product
under its famous CLASE AZUL trademark. Plaintiff's CLASE AZUL brand is widely
regarded as one of the top tequila brands in the world."); ¶ 68 ("Plaintiff's CLASE AZUL
mark has received significant publicity and is widely recognized across the world. Plaintiff's
CLASE AZUL mark is strong, which entitles Plaintiff's CLASE AZUL mark to broad
protection."); ¶ 79 ("Plaintiff owns extensive common law rights in its CLASE AZUL mark
in connection with alcoholic beverage products, namely, its famous tequila products."); ¶ 93
("Plaintiff's CLASE AZUL mark is inherently distinctive and famous amongst consumers in
the State of Texas because of Plaintiff's substantial use of its CLASE AZUL mark in Texas.")

Trademark Rptr. 935 (2019)) at 939.  Professor Thomas McCarthy, an authoritative source on trademark surveys, also confirms that "courts *have not* adopted" any alleged "restriction" that the *Eveready* format is only appropriate "where a senior mark is strong and 'top-of-mind'." McCarthy § 32:174 (emphasis added); *see also Ltd. v. Macy's Merch. Grp. Inc.*, 15-CV-3645 KMW, 2016 WL 4094913, at *10 (S.D.N.Y. Aug. 2, 2016), *aff'd sub nom.*, 695 F. App'x. 633 (2d Cir. 2017) (rejecting plaintiff's argument that defendant's *Eveready* format was "inappropriate where a mark is not widely known or recognized" and should be used "only when the senior mark has 'top-of-mind' awareness."); *WIZKIDS/NECA, LLC v. TIII Ventures, LLC*, 17-CV-2400 (RA), 2019 WL 1454666, at *12 (S.D.N.Y. Mar. 31, 2019) ("[Plaintiff] cites no case, and the court has found none, in which an Ever-ready survey was excluded on the grounds that the mark being tested was not so strong as to be considered a 'top-of-mind' mark.").

As Ezell explained during his deposition, the *Eveready* format is an "appropriate format in a number of cases, even if . . . a plaintiff does not enjoy top-of-mind awareness or does have a 'strong mark,' whatever that may mean.  The *Eveready* survey format exposes respondents to an alleged infringing product, . . .  [a]nd if the Defendant's products [sic] is sufficiently similar to Plaintiff's product or trademark or trade dress in any particular case, then the *Eveready* format it is able to capture confusion."  Ex. 3 to Declaration of Jared I. Kagan (Matthew G. Ezell Deposition Transcript) at 74:23–75:7.

Because the *Eveready* methodology is well accepted, and Plaintiff does not contend Ezell failed to correctly implement that methodology, Plaintiff's motion should be denied.[2]

---

[2]    Plaintiff's motion to exclude reliable evidence is a "risky strategy" because it would "require[] the court to accept that the plaintiff's mark is not familiar enough to the target group of buyers to be the subject of an *Eveready* survey while at the same time is so well-known to those buyers that the defendant's similar mark will be likely to cause confusion." McCarthy § 32:174 (citing *Citigroup Inc. v. AT&T Servs., Inc.*, 16-cv-4333 KBF, 2016 WL

B.    <u>Plaintiff's Other Criticisms Are Meritless, and Provide No Basis to Exclude the Ezell Surveys.</u>

Although Plaintiff identifies additional purported (and meritless) flaws in the design of the Ezell Surveys, the Court should not make credibility decisions in the context of a *Daubert* motion; at most, Plaintiff's criticisms go to the weight to be afforded to the Ezell Surveys, not to their admissibility. *Bailon v. Landstar Ranger, Inc.*, No. 3:16-CV-1022-L, 2019 WL 4741795, at *3 (N.D. Tex. Sept. 27, 2019) ("[I]n reviewing a Daubert challenge, the court makes no credibility determinations; it only decides whether the threshold reliability standards have been satisfied.") (citing Fed. R. Evid. 702 advisory committee's notes to 2000 amendments).

1.    *Survey participants need not be aware of the senior user's brand and be able to identify the brand from memory for an Eveready survey to be effective and capture marketplace realities.*

Plaintiff's argument that "participants may have failed to identify CLASE AZUL because the participants were unfamiliar with CLASE AZUL," and that the Ezell survey did not account for this "marketplace reality," Pl.'s Mot. at 12–13, is wrong. The "marketplace reality" that consumers may not know the name of Plaintiff's CLASE AZUL tequila is already accounted for in the *Eveready* design because, "[i]f someone hasn't been exposed to Clase Azul's product in the marketplace, that is true for them [both in the context of the survey, and] when they continue to shop in stores." Ex. 3 at 54:21–23. The open-ended *Eveready* questions allow a respondent to provide answers based on their actual knowledge of the marketplace, and if someone is not aware of Plaintiff's product, they will not be confused when they encounter Defendant's product

---

4362206, at *7–11, (S.D.N.Y. Aug. 11, 2016) (denying motion for preliminary injunction when "tension" existed between plaintiff's argument that its marks were strong enough that confusion was likely but were not "top-of-mind" so as to be proper for defendant's *Eveready* survey that showed minimal confusion)). Plaintiff cannot have a famous brand on whose coattails Defendant is allegedly riding, and yet simultaneously have a name that cannot be correctly recalled by consumers.

in the marketplace.[3]  Providing survey respondents with information regarding Plaintiff's tequila, as Plaintiff suggests Ezell should have done, Pl.'s Mot. at 11–12, has been flatly rejected by courts.  *MGA Ent., Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 3013218, at *4 (the argument that "Eveready survey methodology does not require a survey universe that is aware of the senior mark [is] consistent with general scholarship on the survey") (citing McCarthy § 32:159).  In fact, the *Eveready* format is "much more reliable because . . . respondents are not made artificially aware of the other party's trademark."  *Great Am. Rest. Co. v. Domino's Pizza LLC*, No. 4:07CV52, 2008 WL 7440300, at *1 (E.D. Tex. Apr. 21, 2008); *see also Herman Miller, Inc. v. Belnick LLC*, No. 1:18-cv-05012-WMR, 2021 WL 2582547, at *1 (N.D. Ga. Jan. 11, 2021) (the benefit of an *Eveready* survey is that it does not prime survey participants before showing them the junior mark and therefore "eliminates [] leading tendencies" of other formats).

The cherry-picked responses that Plaintiff identifies in its motion to argue that respondents who answered "CASA AZUL" may have been actually referring to "CLASE AZUL," Pl.'s Mot. at 13–18, do not support that conclusion, and, in any event, do not alter the results of the Ezell Surveys or undermine their reliability.  Plaintiff's argument that "many consumers incorrectly think the name of Plaintiff's CLASE AZUL tequila is "Casa Azul" is again in tension with its allegations in this case that CLASE AZUL is a strong and famous mark.  *Id.* at 13.

---

[3]    That some respondents may not be aware of Plaintiff's tequila brand while shopping for a tequila brand only bolsters the reality that confusion is less likely.  *See* Ex. 2 at 939 ("Rather, lack of awareness of the senior mark may serve to explain why confusion is not likely to occur—both in the survey and the real world—namely, because confusion simply will not occur when consumers are both unaware of the senior mark and unlikely to encounter the senior mark in reasonably close proximity to the junior mark in the marketplace.").

Plaintiff's argument that respondents in the Canned Products Survey who mentioned "Casa Azul Tequila" were actually thinking of Plaintiff's CASA AZUL tequila because Defendant had not yet launched a tequila at the time the Canned Products Survey was conducted is meritless (and in any event, if appropriate, can be argued by Plaintiff at trial). As Plaintiff has pointed out, with the growing ready-to-drink cocktail space, consumers are often aware that canned cocktails are affiliated with spirits *by the same name.* *See* Dkt. 17 at 16, Plaintiff's Motion for Preliminary Injunction ("Consumers are accustomed to alcoholic spirits such as tequila coming from the same source, or an affiliated source, as canned soda products."). This, coupled with the fact that Defendant's canned product packaging that was shown to respondents states no less than seven times that the tequila soda is made with "tequila," Ex. 3 at 220:16–221:24, could lead an ordinary consumer to believe that Defendant's CASA AZUL canned tequila soda product is affiliated with a CASA AZUL bottled tequila (because it is, even though the bottled product was not sold at the time).

Similarly, in the Bottled Products Survey, respondents were free to identify Plaintiff's products in a variety of ways without guessing[4]—and in fact some respondents did identify Plaintiff in response to the survey questions. *See, e.g.,* Ex. 4 to Declaration of Jared I. Kagan (Ezell Report, Appendix B) at 10–11 (respondents stating "Arturo Lomeli."). Plaintiff points to specific responses citing "different packaging," Pl.'s Mot. at 16, as evidence that the respondents must have been referencing the CLASE AZUL tall hand-painted ceramic decanter, but only one respondent specifically cited "a more decorative bottle," Ex. 4 at 20, and as Ezell pointed out,

---

[4]    Plaintiff's suggestion that it was somehow improper to prompt respondents to "not guess" contradicts standard survey practice. *Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 576 (E.D.N.Y. 1999) (stating that the results of the plaintiff's survey are "likely to be inflated" because "respondents were not explicitly instructed against guessing").

and that respondents could have been thinking of Cazul or Casazul, or any other brand with a "decorative bottle." Ex. 3 at 183:12–21. Any reference to "different packaging" or "different form" could have just as easily referred to Defendant's CASA AZUL canned cocktail which was already on the market at the time of the expanded launch of the Bottled Products Survey. Ex. 3 at 212:20–213:9. Even if such responses were re-coded, the level of confusion would still not be actionable.[5] Plaintiff can argue at trial about whether the data should be re-coded, but that criticism provides no basis to exclude the Ezell Surveys.

> 2. *The Ezell Surveys properly asked respondents about "brands" due to the nature of the case.*

Plaintiff's argument that Ezell did not follow the protocol set forth in *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976)—because the Ezell Surveys asked respondents about "products" and "brands" (and not just "products," as in the original *Eveready* format)—is meritless, and in any event, would provide no basis to exclude the Ezell Surveys.

The questions in the original *Eveready* survey that asked respondents to identify "products" were meaningful in that context because the alleged infringing goods ("Ever-Ready" miniature lamp bulbs and high-intensity lamps) were different products than those made by the

---

[5]    When crediting all of the examples cited by Plaintiff as respondents who confused the test stimulus with Plaintiff's CLASE AZUL product, Pl.'s Mot. at 14–18, the differences are negligible. Accepting Plaintiff's argument with respect to the Canned Products Survey, only 1.67% (up from 0%) of respondents (or 5 respondents up from 0) were confused as to who makes or markets Defendant's CASA AZUL product, and 0.67% (up from 0%) of respondents (or 2 respondents up from 0) were confused as to what other brand(s), if any, are sold by whomever the respondent believed made or put out Defendant's CASA AZUL product. *See* Ex. 1 at 13–14. Accepting Plaintiff's argument with respect to the Bottled Products Survey, only 3.09% (up from 2.41%) of respondents (or 9 respondents up from 7) were confused as to who makes or markets Defendant's CASA AZUL product and 1.03% (up from .69%) of respondents (or 3 respondents up from 2) thought Defendant's product had the sponsorship or approval of Plaintiff. *See* Ex. 1 at 19, 21. These levels of *de minimis* confusion are not actionable. *See* McCarthy § 32:189 ("When the percentage results of a confusion survey dip below 10%, they can become evidence which will indicate that confusion is not likely.") (collecting cases).

plaintiff ("Eveready" branded batteries, flashlights and bulbs), so when respondents were asked about other "products" and they replied with "batteries and flashlights" it was evidence that they were thinking of plaintiff's products because plaintiff was famously known for its batteries and defendant admittedly did not sell batteries.  *Id.* at 387.  Also significant, was that, in *Union Carbide Corp.*, the two "brand" names at issue were "identical," which is why the question about other "products" was particularly relevant.  *Id.* at 382.

In contrast, asking respondents in the Ezell Surveys what other "products" respondents thought were made or put out by the company that makes CASA AZUL would not have provided useful data for assessing likelihood of confusion.  That is because a respondent who simply responded "tequila" (*i.e.*, the related product category) to the question that asked about other "products" could have been thinking of Casamigos, Cazul, or any other of the dozens of tequila products on the market, not necessarily CLASE AZUL.  The "What other brand(s)" question specifically helps to elicit a potential CLASE AZUL response over an ambiguous "tequila" response.  *See* Ex. 1 at ¶ 27 ("These questions are well accepted in the field of trademark surveys and by courts as an effective way to assess whether respondents are confused as to the source of the product shown in the stimulus.")

Not only does Plaintiff's argument fail to provide any basis to exclude the Ezell Surveys, it also ignores numerous cases in which courts have accepted surveys with questions phrased similarly to the questions in the Ezell Surveys, including other surveys designed by Ezell.  *See Orgain, Inc. v. N. Innovations Holding Corp.*, No. 818CV01253JLSADS, 2022 WL 2189648, at *5–6 (C.D. Cal. Jan. 28, 2022) (accepting expert survey in which respondents were asked "What other brand or brands, if any, do you believe are made or put out by whoever makes or puts out this product?  Please be as specific as possible." (Ex. 5 to Declaration of Jared I. Kagan

(underlying Expert Report of Matthew G. Ezell) at 9); *Lontex Corp. v. Nike, Inc.*, No. CV 18-5623, 2021 WL 1145904, at *4, 11 (E.D. Pa. Mar. 25, 2021) (accepting expert survey in which respondents were asked "What other brand or brands, if any, do you believe are made or put out by whoever makes or puts out this product? Please be as specific as possible." (Ex. 6 to Declaration of Jared I. Kagan (underlying Expert Report of Matthew G. Ezell) at 10; *E & J Gallo Winery v. Proximo Spirits, Inc.*, No. 1:10-CV-00411 LJO, 2011 WL 5922090, at *2, 8 (E.D. Cal. Nov. 28, 2011) (accepting expert survey in which respondents were asked "What other brand or brands, if any, do you believe are put out by the company that puts out this product?" (Ex. 7 to Declaration of Jared I. Kagan (underlying expert declaration) at 14); *Masterfoods USA v. Arcor USA, Inc.*, 230 F.Supp.2d 302, 311, 313 (W.D.N.Y. 2002) (granting preliminary injunction, in part, because of evidence of actual confusion shown by expert's survey in which respondents were asked "[W]hat other brand name or names, if any, do you believe are used by the company that puts out these candies[?]").

3. *The Ezell Surveys did not need to ask respondents to explain why they did not know answers to questions.*

Plaintiff's argument that the Ezell Surveys should have asked survey respondents why they responded "Don't Know" to questions is illogical and unsupported.  Including an option for respondents in an *Eveready* survey to select they "Don't Know" the answer to a question, without providing respondents an opportunity to explain why they "Don't Know," is standard. *See THOIP*, 690 F. Supp. 2d at 241 (accepting *Eveready* survey, where only respondents who answered with a brand-name were asked the follow-up explanation questions, despite presence of "don't know" answers as an option.).

Ezell's testimony underscores why Plaintiff's proposed question makes no sense: "I just don't think that's a very productive question.  If someone doesn't know who makes a product, I

don't think it's helpful to ask them, 'Why do you say you don't know?'  I think they're [sic]

response is simply going to be, 'I don't know because I don't know.'  So I just don't see that

being a helpful probe."  Ex. 3 at 100:2–7; *see also American Home Prods. Corp. v. Procter &*

*Gamble Co.*, 871 F. Supp. 739, 748 (D.N.J. 1994) ("[T]he Court finds that this repetitive manner

of questioning ... produced results that cannot be relied upon."); *Johnson & Johnson-Merck*

*Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 135 (3d Cir.

1994) ("The technique of punctuating open-ended questions with repeated probes is

questionable.").

     The actual responses in the Ezell Surveys support Ezell's approach.  Even though certain

questions in the Ezell Surveys offered respondents an option to select "Don't Know" rather than

type a free-form response, many respondents nonetheless typed in "I don't know" (or something

to that effect).  Because those respondents typed in a response, they were then asked the follow

up question, "Why do you say that?"  The responses to that question underscore that specifically

asking respondents who selected "Don't Know" why they said that would not have provided any

additional useful data.[6]  Again, Plaintiff is free to criticize the Ezell Surveys at trial, but the

criticism provides no basis to exclude the surveys.

---

[6]    A non-exhaustive list of responses to the "Why do you say that?" question from respondents
who typed "Don't Know" or something to that effect include:  RESPID 1173 who stated
"Because I see the name of the product however the maker of the product isn't shown, so
I'm honestly unsure."  RESPID 1025 who stated "Never heard of company."  RESPID 1031
who stated "Don't know."  RESPID 1050 who stated "None to mention."  RESPID 1054
who stated "Because i dont know."  RESPID 1058 who stated "cant tell."  RESPID 1076
who stated "I can't see any indication of another company."  RESPID 1087 who stated "i
don't know of any other."  RESPID 1090 who stated "I can't really tell."  RESPID 1091 who
stated "I don't see any information that says otherwise and I think if they make an anejo
and a reposado that they would be fairly well known."  RESPID 1094 who stated "i just really
have no idea."  RESPID 1101 who stated "Nothing else looks like it."  RESPID 1119 who
stated "I haven't seen any other tequila bottles or brands like this one."  RESPID 1134 who

4.    *The Canned Product Survey sampled a proper universe.*

Plaintiff argument that the Canned Products Survey "ensured many respondents would not be aware of Plaintiff's tequila brand" by not limiting the survey universe to people who were likely to purchase a "canned tequila soda product" is meritless.  Pl.'s Mot. at 22.  An appropriate universe survey universe consists of purchasers "likely to partake" in Defendant's canned ready-to-drink tequila soda, *TravelPass Grp., LLC*, 2021 WL 6334670, at *8, which Ezell properly defined as purchasers of ready-to-drink canned cocktails.  Consumers who go into a store to purchase such a product are presented with an array of brightly colored cans from Defendant's competitors that range from vodka sodas to canned margaritas to hard seltzers.  *See* Ex. 3 at 26:15–22.  Plaintiff has not demonstrated or argued that there is any difference, let alone a meaningful one, between consumers who plan to purchase tequila-based ready-drink-cocktails from those who plan to purchase other ready-to-drink canned cocktails.  On the contrary, ready-to-drink canned cocktails is a product category that includes canned cocktails made with all different spirits, as shown in the below shelf set and as reflected in the marketplace.[7]

---

stated "I'm not certain of what other beverages are made."  RESPID 1161 who stated "I just know he owns Casa Azul. If there are others I would love to know."  *See* Ex. 4 at 34, 51–56.

[7]    *See, e.g.*, Delish, *23 Best Canned Cocktails of 2023*, https://www.delish.com/entertaining/g27421870/canned-cocktails/ (exploring the best "ready-to-drink cocktails made with premium spirits and fresh ingredients" ranging from tequila based cocktails, to vodka, gin,  rum and other liquors.); Mashed, *20 Best Canned Cocktails to Try in 2023*, https://www.mashed.com/1230421/best-canned-cocktails-to-try/ (ranking canned cocktails in a "wide range of brands, types of alcohol, and flavor profiles so there's something for everyone to pick out of the cooler").



Ex. 8 to Declaration of Jared I. Kagan (Document produced by Defendant to Plaintiff stamped with the Bates Range Casa0008378–Casa0008409) at Casa_0008394.

Plaintiff's conjecture that respondents in the Ezell Surveys knew "nothing about tequila" also is unsupported by the data. *See* Ex. 9 to Declaration of Jared I. Kagan (Ezell Report, Appendix A) at 99 (showing that no fewer than 12.66% of respondents named tequila brands other than Casa Azul).

***

None of Plaintiff's criticisms of the Ezell Surveys provide a basis to exclude the surveys. To the extent any of Plaintiff's comments on the surveys have any merit, which Defendant disputes, Plaintiff can raise them at trial. Because Mr. Ezell is qualified and has presented opinions that are both relevant and reliable, Plaintiff's *Daubert* motion should be denied. *See Hall Arts Ctr. Off.*, 327 F. Supp. 3d at 1001.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion to exclude the expert report and opinions of Matthew G. Ezell.

[signature page follows]

Dated: Sept. 13, 2023

Respectfully submitted,

Adam D. Mandell
Attorney-in-Charge
Texas State Bar No. 24082387
Southern District of Texas Bar No. 3441007
**MILLEN WHITE ZELANO & BRANIGAN PC**
Suite 1400
2200 Clarendon Blvd.
Arlington, Virginia 22201
Tel: 703-243-6333
Email: mandell@mwzb.com

/s/ Jared I. Kagan
David H. Bernstein (admitted *pro hac vice*)
Jyotin Hamid (admitted *pro hac vice*)
Jared I. Kagan (admitted *pro hac vice*)
Nicole M. Flores (admitted *pro hac vice*)
Marissa MacAneney (admission *pending*)
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Blvd. E
New York, New York 10001
(212) 909-6000
dhbernstein@debevoise.com
jhamid@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com
mpmacaneney@debevoise.com

**ATTORNEYS FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 13, 2023, a true and correct copy of the

foregoing document was served on all counsel of record via the Court's ECF system.


<u>*/s/ Jared I. Kagan*</u>
Jared I. Kagan