**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

Casa Tradición S.A. de C.V.,

        Plaintiff,

        v.

Casa Azul Spirits, LLC,

        Defendant.

Civil Action No. 4:22-cv-02972
JURY TRIAL DEMANDED

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF MATTHEW G. EZELL**

{00427546.1}

## Table of Contents

I.    Preliminary Statement ................................................................................................ 1

II.   Arguments and Authorities in Reply to Defendant's Arguments ............................ 1

   A.    The Court's ruling on a ***Preliminary*** Injunction does not govern the admissibility of Ezell's Report, his surveys, and his opinions. ...................................................... 1

   B.    The "gold" standard is not so gold for marks that are commercially strong but not top-of-mind.................................................................................................................... 4

   C.    Ezell did not establish Plaintiff's mark is top-of-mind or otherwise famous. .................... 6

   D.    Mr. Ezell and Defendant over emphasized Plaintiff's allegations of fame......................... 8

   E.    Defendant equating "brands" with "products" further demonstrates Mr. Ezell's fatal flaw in choosing to omit the products question.................................................... 10

   F.    Defendant's proffered reason why Ezell did not ask the products question does not make sense. ..................................................................................................................... 12

   G.    Defendant's fails to address Ezell's choice of an *Eveready* survey despite the parties' products being proximate in the marketplace. ........................................................ 14

   H.    Ezell Canned Products survey was not directed to the target group of buyers for Defendant's tequila soda. ......................................................................................... 15

III.   CONCLUSION ........................................................................................................ 15

## Table of Authorities

**Cases**

*E & J Gallo Winery v. Proximo Spirits, Inc.*, No. 1:10-cv-00411 LJO JLT, 2011 U.S. Dist. LEXIS 136053 (E.D. Cal. Nov. 28, 2011) .............................................................................. 13

*Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 750 F.3d 486 (5th Cir. 2014) ................................ 1

*Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) .................................................. 4

*Kreation Juicery, Inc. v. Shekarchi*, No. CV 14-6568 DMG (ASx), 2014 U.S. Dist. LEXIS 180710 (C.D. Cal. Sept. 17, 2014) ........................................................................................... 7

*Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2021 U.S. Dist. LEXIS 56647 (E.D. Pa. Mar. 25, 2021) ....................................................................................................................................................... 13

*Masterfoods USA v. Arcor USA, Inc.*, 230 F. Supp. 2d 302 (W.D.N.Y. 2002) ............................ 13

*Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-cv-01253-JLS-ADS, 2022 U.S. Dist. LEXIS 109050 (C.D. Cal. Jan. 28, 2022) ................................................................................. 13

*Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023 (C.D. Cal. 2013) ........................ 8

*Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976) ..................................... 12

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) .......................................................................... 2

*Vineyard House, LLC v. Constellation Brands U.S. Ops. Inc.*, 515 F. Supp. 3d 1041 (N.D. Cal. 2021) ............................................................................................................................................ 9

*Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180 (S.D. Fla. 2021) ...................... 9

**Other Authorities**

J.B. Swann, *Likelihood of Confusion Studies and the Straightened Scope of Squirt*, 98 THE TRADEMARK RPTR. 739 (2008) ................................................................................................... 5

Jerre B. Swann & Charles Henn Jr., *Likelihood of Confusion Surveys: The Ever-Constant Eveready Format; The Ever-Evolving Squirt Format*, 109 THE TRADEMARK RPTR. 671 (2019) ................................................................................................................................ 6

Jerre B. Swann, *Eveready and Squirt—Cognitively Updated*, 106 THE TRADEMARK RPTR. 727 (2016) ...................................................................................................... 5, 6

**Rules**

FED. R. EVID 702(d) .............................................................................................................. 9

**Treatises**

6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed. 2017)................................................................................................................................ 4

Plaintiff, Casa Tradición S.A. de C.V. ("Casa Tradición" or "Plaintiff") respectfully submits this reply to Defendant Casa Azul Spirits, LLC's ("Defendant") response in opposition to Plaintiff's *Daubert* motion to exclude the expert report and opinions of Matthew G. Ezell. *See* Doc. 101 ("Defendant's Response"). In support of this reply, Plaintiff sets forth the following:

## I.        Preliminary Statement

In accordance with the Court's procedures, Plaintiff's *Daubert* Motion to Exclude Expert Report and Testimony of Defendant's Expert Matthew G. Ezell (Doc. 94) ("Motion") sets forth the statements concerning, *inter alia*, (i) the nature and stage of this proceeding and (ii) the issues to be ruled on by the Court including the applicable standard of review.

In the present filing, Plaintiff replies to Defendant's arguments in Defendant's Response. As discussed below, the arguments in Defendant's Response further establish the Ezell Surveys are based on a flawed implementation of the *Eveready* methodology and, therefore, are not reliable and will not assist the trier of fact. In sum, the Ezell Surveys, and any testimony Mr. Ezell plans to proffer based thereon, do not meet the requirements of Federal Rules of Evidence Rule 702.

## II.       Arguments and Authorities in Reply to Defendant's Arguments

### A.    The Court's ruling on a ***Preliminary*** Injunction does not govern the admissibility of Ezell's Report, his surveys, and his opinions.

Defendant repeatedly suggests the Court's prior ruling on the preliminary injunction governs admissibility of the Ezell Surveys at trial. The Court's preliminary injunction ruling does not control at this stage. "[G]iven the haste that is often necessary" to achieve its purpose, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 (5th Cir. 2014) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S.

390, 395 (1981)). As such, "findings of fact and conclusions of law made by a court [ruling on] a preliminary injunction are not binding at trial on the merits." *Id.*

Defendant argues the Ezell Canned Products Survey is reliable because the Court considered that survey in its prior ruling. *See* Doc. 101 at ECF pages 6 (Preliminary Statement), 6-8 (Background), & 10-11 (Argument). The evidence was less complete then. Plaintiff subsequently deposed Mr. Ezell about the *Eveready* surveys he used, his reasons for deciding to use the *Eveready* format, and his specific implementation of the *Eveready* format in this case.[1] That deposition revealed Mr. Ezell used the *Eveready* format in his Canned Products Survey (as well as his Bottled Products Survey) because the *Eveready* format is the ***only*** format he uses. *See* **Exhibit 1** to Declaration of Edward B. Marvin (Deposition of Matthew G. Ezell dated June 9, 2023 ("Ezell Deposition")) at 58:2 – 61:2[2] (indicating Mr. Ezell has never conducted a *Squirt* survey and "I've not conducted enough or seen the need to conduct anything other than a standard Eveready"). In other words, it makes no difference to Mr. Ezell if the *Eveready* format is a "good fit" given the facts of the case. The *Eveready* format is the only format he uses even if a *Squirt* format survey would be more appropriate to the facts of the case. *See* FED. R. EVID. 702(d) (indicating a requirement for admissibility is "the expert has reliably applied the principles and methods ***to the facts of the case***" (emphasis added)); *see also* Doc. 94 at ECF page 7 (citing Fifth Circuit requirement that expert testimony must "fit" the case to assist the trier of fact).

Since the preliminary injunction, Plaintiff also had the time to fully consider the data underlying Mr. Ezell's Canned Products Survey and what that data shows. As Plaintiff pointed

---

[1] Plaintiff and Defendant both cite to excerpts from Mr. Ezell's June 9, 2023 deposition in the briefing on the present Motion to Exclude Mr. Ezell's report and opinions.

[2] Hereinafter, all citations to Exhibits in this Reply are in reference to the exhibits attached to the Declaration of Edward B. Marvin filed herewith.

out in its Motion, the underlying data from the Canned Products Survey (as well as Mr. Ezell's deposition testimony) revealed serious flaws concerning Mr. Ezell's failure to recognize and account for marketplace realities in his survey design. *See* Doc. 94 at ECF pages 17-20 (giving examples where Canned Products Survey respondents were referring to Plaintiff but were coded as referring to Defendant). These defects were not brought to the Court's attention at the preliminary injunction stage given the expedited schedule and lack of discovery.

Discovery since the preliminary injunction also revealed Defendant considers Plaintiff's tequila as one of its primary competitors, thus establishing the competitive proximity of Defendant's and Plaintiff's products and further undercutting Mr. Ezell's use of *Eveready*. Plaintiff provided the Court with a detailed analysis and evidence demonstrating the proximity of Defendant's CASA AZUL tequila soda and Plaintiff's CLASE AZUL tequila.[3] It is, however, Defendant's burden—not Plaintiff's—to establish Mr. Ezell's Canned Products Survey should be admitted. Doc. 94 at ECF page 7 (giving legal standard for admissibility and indicating Defendant has the burden to establish admissibility). Regardless, this evidence of proximity was in Defendant's (or its agent's) sole possession at the time of the Preliminary Injunction briefing and hearing and, thus, was not considered by Plaintiff or the Court.

As to the Bottled Products Survey, Mr. Ezell did not complete that survey until months after the preliminary injunction briefing. Yet, Defendant implies it too should be admitted because Mr. Ezell "mimicked" the Canned Products Survey and "subsequently adopted the same methodology" as the Canned Products Survey. Doc. 101 at ECF pages 8 & 11. Arguing a later-conducted Bottled Products Survey is automatically admissible simply because the Court

---

[3] *See* Doc. 109 at ECF pages 13-16 and accompanying exhibits (Plaintiff's redacted response to Defendant's Motion to Exclude Plaintiff's Expert, Dr. Isabella Cunningham) & Doc. 110 at ECF pages 13-16 and accompanying exhibits (Plaintiff's unredacted (sealed) response to Defendant's Motion to Exclude Plaintiff's Expert, Dr. Isabella Cunningham).

previously considered a different survey from the same expert during the preliminary injunction stage is copycat logic that, if adopted, would abdicate the *Daubert* gatekeeping principles. Determining reliability under *Daubert*, "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) Simply concluding the Bottled Products Survey is reliable based on Defendant's copycat logic, would not link the facts (*e.g.*, the different individual survey respondents' responses in the underlying data, the proximity of the parties' products, etc.) to Mr. Ezell's conclusion. Further, adopting such copycat logic would also render meaningless all the discovery conducted after the preliminary injunction, as mentioned above.

Defendant is stuck in the past and wants the Court to ignore the realities of the evidence that has come to light since the preliminary injunction briefing and hearing. The preliminary injunction briefing and hearing (or the Court's decision of same) does not control the outcome of this case, nor does it control the admissibility of Mr. Ezell's surveys and his opinions based thereon.

B.  <u>The "gold" standard is not so gold for marks that are commercially strong but not top-of-mind.</u>

Defendant also repeatedly references the *Eveready* methodology as being the "gold standard," but ignores the context of the "gold standard" label. The "gold standard" label is often attributed to the McCarthy trademark treatise. Mr. Ezell cited the applicable section from McCarthy in his report. *See* Doc. 94-2 at ECF page 3, ¶ 7 & n.1 (citing 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (hereinafter, "MCCARTHY") § 32.174 (5th ed. 2017). However, MCCARTHY attributes the "gold standard" language to Jerre Swann. MCCARTHY § 32.174. When one fully considers the quote in MCCARTHY, it is clear Swann

considers *Eveready* the gold standard for only certain types of marks: "Swann remarked that: 'In cases involving strong marks, the Eveready test should be considered the gold standard for fundamental cognitive and marketing reasons.'" *Id.* (quoting J.B. Swann, *Likelihood of Confusion Studies and the Straightened Scope of Squirt*, 98 THE TRADEMARK RPTR. 739, 746 (2008)).[4]

Swann has subsequently explained his position concerning when *Eveready* should be considered the gold standard. In 2016, Swann commented "[i]n prior writings, I overemphasized the commercial strength component of a mark as a qualification for Eveready survey treatment" and "commercial strength, as typically understood, is not sufficient in and of itself; it is the 'top-of-mind' characteristic that truly gives a mark reach" for an *Eveready* to be appropriate. Jerre B. Swann, *Eveready and Squirt—Cognitively Updated*, 106 THE TRADEMARK RPTR. 727, 732-33 (2016).[5] In 2019, Swann explained:

> With respect to commercially strong senior marks that are ***readily accessible*** in memory, a comparison of marks can take place ***in the consumer's mind*** when a similar junior use is encountered in the marketplace. A readily accessible senior mark can be conceptualized as residing near the surface of a consumer's memory and potentially ***reaching*** any market into which the consumer travels (irrespective of whether the senior user's product or service is sold therein). Likelihood of confusion with respect to readily accessible senior marks has been historically assessed by the ***unaided*** Eveready format: a monadic exposure to a junior use and an ***open-ended*** question as to who makes or puts out the junior user's product or service.

Jerre B. Swann & Charles Henn Jr., *Likelihood of Confusion Surveys: The Ever-Constant Eveready Format; The Ever-Evolving Squirt Format*, 109 THE TRADEMARK RPTR. 671, 672

---

[4] Plaintiff previously filed a copy of the *Likelihood of Confusion Studies and the Straightened Scope of Squirt* article as Doc. 109-2.
[5] A copy of the *Eveready and Squirt—Cognitively Updated* article is attached to Defendant's Motion to Exclude Plaintiff's survey expert, Dr. Isabell Cunningham. *See* Doc. 95-7.

(2019) (footnotes omitted).[6] In sum, "[t]he Eveready format is thus the gold standard for assessing confusion as to (readily recalled) top-of-mind marks; but ***not all commercially strong marks are cognitively stored top-of-mind***; and the ***Eveready format is thus not appropriate for all strong marks***." Jerre B. Swann, *Eveready and Squirt—Cognitively Updated*, 106 THE TRADEMARK RPTR. 727, 734 (2016) (emphasis added).[7]

Thus, according to the originator of the "gold standard," the *Eveready* format is only appropriate if Plaintiff's CLASE AZUL mark is considered "top-of-mind" so that it is "readily accessible" to survey respondents when they viewed Defendant's products.[8]

C. Ezell did not establish Plaintiff's mark is top-of-mind or otherwise famous.

Mr. Ezell did not make any determination concerning whether Plaintiff's CLASE AZUL mark qualified as being a top-of-mind, readily accessible mark in choosing the *Eveready* format he employed. When asked about whether he considered Plaintiff's CLASE AZUL mark as a strong mark, Mr. Ezell testified as follows:

> I don't have to determine whether or not Plaintiff's mark is a strong mark to use Eveready. There's a paper published, "An Empirical Assessment" is the first three words of the title. It's a paper published by Mr. Hal Poret in the Trademark Reporter, in 2019.
>
> And that paper indicates that the Eveready format is appropriate, even for marks that are not top-of-mind, that do not enjoy top of mind awareness.

---

[6] A copy of the *Likelihood of Confusion Surveys: The Ever-Constant Eveready Format; The Ever-Evolving Squirt Format* article is attached to Defendant's Motion to Exclude Plaintiff's survey expert, Dr. Isabella Cunningham. *See* Doc. 95-5.

[7] A copy of the *Eveready and Squirt—Cognitively Updated* article is attached to Defendant's Motion to Exclude Plaintiff's survey expert, Dr. Isabella Cunningham. *See* Doc. 95-7.

[8] Under Defendant's logic that somehow the Court's findings on the preliminary injunction are binding here, Mr. Ezell's choice of the *Eveready* format would be entirely inappropriate according to Swann since the Court found at that time Plaintiff's mark was weak. Doc. 42 at 14-15 (stating "[t]he lack of recognition of the CLASE AZUL trademark . . . points to the weakness of the mark"). While Plaintiff disagrees with such a finding and intends to prove otherwise during a trial on the merits, Plaintiff merely points out that Defendant arguing Plaintiff's mark is weak is in tension with arguing *Eveready* should be considered the "gold standard" in this case. If Plaintiff's mark is weak, as Defendant contends, *Eveready* would not be the proper format.

**Exhibit 1**, (Ezell Deposition) at 73:2 – 74:4. In other words, Mr. Ezell did not base his decision to use *Eveready* on any analysis he performed or application of facts *vel non* surrounding Plaintiff's mark or other facts particular to this case. Rather, Mr. Ezell's basis for using the *Eveready* format was because of deference he gave to an article written by another expert, Hal Poret. *See* Doc. 101 at ECF pages 11-12 (Defendant's Response defending use of the *Eveready* format because Hal Poret said so); *see also Kreation Juicery, Inc. v. Shekarchi*, No. CV 14-6568 DMG (ASx), 2014 U.S. Dist. LEXIS 180710, at *19 n.4 (C.D. Cal. Sept. 17, 2014) (giving an *Eveready* survey little weight because the defendants did not meet the burden of showing the plaintiff's mark was well known for an *Eveready* survey to be appropriate and finding the defendants' expert "should have screened respondents to confirm they knew the [plaintiff's] brand").

In fact, for different reasons, Defendant and Plaintiff both provided the Court with the Hal Poret article referenced by Mr. Ezell.[9] A careful review of the article compared to facts of this case demonstrates Mr. Ezell's basis for using *Eveready* (*i.e.*, because Hal Poret said so) is not on solid ground. With his article, Hal Poret sought to "empirically test the ability of the Eveready survey to detect significant levels of confusion . . . in certain scenarios involving senior marks that are *not* top-of-mind." Doc. 94-18 at ECF page 5. As part of his empirical test, Mr. Poret conducted an *Eveready* survey for three existing brands he considered as being *not* top-of-mind in three product categories: (1) FILA for athletic sneakers, (2) KIX for breakfast cereal, and (3) FANTA for soda/pop. Doc. 94-18 at ECF pages 13-18 (discussing how Mr. Poret concluded FILA, KIX, and FANTA were not top-of-mind and the *Eveready* surveys he conducted based on those marks). Critically, Mr. Poret included the standard product question, asking respondents

---

[9] *See* Doc. 94-18 (attaching Hal Poret article as exhibit to Plaintiff's Motion to Exclude Mr. Ezell; *accord* Doc. 101-3 (attaching Hal Poret article as exhibit to Defendant's Response to Plaintiff Motion to Exclude Mr. Ezell).

Case 4:22-cv-02972    Document 125    Filed on 09/29/23 in TXSD    Page 12 of 21

"Whether they think any other ***products*** are made or put out by the same brand as the product they were told about and, if so, what ***products***." *Id.* at ECF page 20 (describing the two open-ended questions Mr. Poret asked respondents) (emphasis added). In contrast, as Plaintiff points out in its Motion, Mr. Ezell did <u>*not*</u> ask the standard *Eveready* products question in his surveys. Doc. 94 at ECF page 24. Thus, even if Mr. Ezell's asserted justification for using *Eveready* (*i.e.*, because Hal Poret said so) was a valid basis—which it is not—Mr. Ezell did not ask the same questions as Mr. Poret. Accordingly, Mr. Ezell's surveys fail to reliably measure confusion, even on the "because-Hal-Poret-said-so" basis.

In an attempt to validate the "because-Hal-Poret-said-so" logic, Defendant cites *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1045 (C.D. Cal. 2013), as a court "crediting [an (sic)] *Eveready* survey where plaintiff's mark was commercially weak and not well-known." Doc. 101 at ECF page 11. However, contrary to Defendant's assertion, while the *Stonefire Grill* Court found the survey admissible, the court did <u>not</u> consider the survey because the plaintiff's expert objected to the *Eveready* methodology as being inappropriate given that the plaintiff's mark was not famous through the United States. *Compare Stonefire Grill, Inc.*, 987 F. Supp. 2d at 1045 (discussing Dr. Jacoby's (*i.e.*, the plaintiff's expert) criticism of Dr. Ford's *Eveready* survey), *with* id. at 1054 (stating "[i]n light of Jacoby's objections to the survey and the manner in which it was conducted, the Court finds that the survey results are in dispute and will not consider the survey here.").

D.  <u>Mr. Ezell and Defendant over emphasized Plaintiff's allegations of fame.</u>

When asked about the strength of Plaintiff's mark, Mr. Ezell also noted Plaintiff alleged its mark is famous. **Exhibit 1**, (Ezell Deposition) at 73:11-13 ("I would, however, notice or note that the complaint submitted in the preliminary injunction indicated that the Casa Azul [(sic, Clase Azul)] trademark was famous."). Defendant's Response similarly argues Plaintiff's

{00427546.1}                                    8

allegations somehow control whether Mr. Ezell's surveys are reliable. Doc. 101 at ECF page 11 & n.1. However, Mr. Ezell was criticized by at least one court for relying on allegations made in a complaint without more as the basis for choosing an *Eveready* format. *Vineyard House, LLC v. Constellation Brands U.S. Ops. Inc.*, 515 F. Supp. 3d 1041, 1071-72 (N.D. Cal. 2021) (finding "the use [of the *Eveready* survey approach Mr. Ezell conducted] revealed virtually nothing" because Mr. Ezell failed to adapt the survey to the facts of the case but, instead, relied on mere allegations to support his choice of *Eveready*). According to the *Vineyard House* Court:

> The notion that Mr. Ezell conducted the survey in this manner because Constellation claimed it was a "strong source identifier" for "Constellation Brands" itself in an unverified complaint strains credulity and elevates a technicality over substance. Rule 8 requires only notice pleading. The belief that such a tactic would warrant any measure of serious consideration defies logic.

*Id.* at n.7. Other courts have similarly rejected the logic that unsupported allegations control whether a mark is famous and enjoy top-of-mind awareness for an *Eveready* format to be proper. *Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1227-29 (S.D. Fla. 2021) (finding "little value in Monster's *Eveready* survey" because Monster could not convince court senior user's mark was top-of-mind).

Consistent with *Vineyard House*, Defendant's claim here—*i.e.*, that the *Eveready* format is automatically deemed the proper default format because Plaintiff made allegations of fame—elevates a technicality over substance and defies logic. Determining reliability under the *Daubert* analysis does not hinge on whether a party has made allegations; reliability is determined by whether the expert applied the principles and methods to the facts of the case. FED. R. EVID. 702(d).

Nevertheless, Defendant denied all of Plaintiff's allegations of fame,[10] and it argued Plaintiff's mark was weak as its very first argument in the preliminary injunction briefing.[11] Defendant's argument that Plaintiff's mark is famous because Plaintiff alleged Plaintiff's mark is famous contradicts the very position Defendant has consistently taken throughout this case that Plaintiff's mark is weak.

E. <u>Defendant equating "brands" with "products" further demonstrates Mr. Ezell's fatal flaw in choosing to omit the products question.</u>

Defendant argues "*[s]urvey participants need not be aware of the senior user's brand*" for an *Eveready* survey to be effective but points to consumers' knowledge of Plaintiff's **products** as establishing marketplace realities. Doc. 101 at ECF page 13. Specifically, Defendant argues "[t]he 'marketplace reality' that consumers may not know the name of Plaintiff's CLASE AZUL tequila is already accounted for in the *Eveready* design because, '[i]f someone hasn't been exposed to Clase Azul's ***product*** in the marketplace, that is true for them [both in the context of the survey, and] when they continue to shop in stores." *Id.* (quoting Mr. Ezell's testimony) (second and third quote alterations in Defendant's Response) (emphasis added). In other words, "if someone is not aware of Plaintiff's ***product***, they will not be confused when they encounter Defendant's product." *Id.* (emphasis added). However, as Plaintiff's Motion points out, Mr. Ezell's surveys did not ask respondents to identify products, rather he deliberately asked respondents to identify what other "brands" are put out by whoever puts out Defendant's product. Doc. 94 at ECF page 24.   Thus, Defendant's marketplace reality argument is inconsistent with the survey methodology Mr. Ezell utilized.

---

[10] *Compare* Doc. 101 at ECF page 11 n.1 (listing Plaintiff's allegations in the Amended Complaint), *with* Defendant's Ans. to Plaintiff's First Am. Compl. (Doc. 65) (denying each of the allegations Defendant listed in its Response).
[11] Doc. 22 at ECF pages 13-15.

Mr. Ezell's deliberate decision to use "brands" instead of "products" is a primary fatal flaw in his analysis. Many people mistakenly think Plaintiff's brand is "Casa Azul" instead of the correct CLASE AZUL. However, Mr. Ezell's methodology was not designed to account for this marketplace reality. Contrary to Defendant's interpretation of Plaintiff's argument, the issue is not that consumers aren't aware of Plaintiff's brand. The issue is that many consumers are aware of Plaintiff's brand but mistakenly refer to the brand as "Casa Azul." Yet, under Mr. Ezell's chosen methodology to use the word "brands" instead of "product" the trier of fact has no way of knowing whether respondents were referring to Plaintiff or Defendant. Accordingly, each time a respondent answered "Casa Azul" and did not give enough information to determine whether they meant Plaintiff or Defendant, the response is unreliable. It is not just the examples Defendant characterizes as "cherry-picked," it is every "Casa Azul" response provided by the respondents that did not include enough information for one to determine whether the respondents meant Plaintiff or Defendant.

Even a response that says "Casa Azul" and answers "because it says so on the box" (or words to that effect) in response to the "why do you say that" question is unreliable. Such a respondent could legitimately be referring to Defendant or could be under the mistaken belief that "Casa Azul" referred to Plaintiff's tequila that they had either consumed before or heard of but did not know or recall the correct brand name.[12]

Similarly, Defendant claims "Plaintiff's argument that respondents in the Canned Products Survey who mentioned 'Casa Azul Tequila' were actually thinking of Plaintiff's CASA AZUL [(sic, CLASE AZUL] tequila" is meritless because those respondents may have assumed Defendant's tequila soda was affiliated with Defendant then-unavailable tequila.[13] This argument

---

[12] Of course, it is undisputed Defendant did not have a tequila on the market at the time Mr. Ezell collected his data.
[13] Doc. 101 at ECF page 15.

presents the same unreliability issue: One simply cannot determine under Mr. Ezell's survey methodology whether those survey responses were due to the respondent assuming there was an unreleased CASA AZUL tequila affiliated with CASA AZUL tequila soda, or if the respondent mistakenly thought CASA AZUL tequila soda was affiliated with Plaintiff because the respondent did not accurately know or recall Plaintiff's brand name. There is no way to tell based on Mr. Ezell's survey design.

At best, Mr. Ezell's survey results are confusing and will not assist the trier of fact. At worst, the survey results are not reliable. Either way, they should not be admitted under Rule 702 or the *Daubert* framework.

  F. <u>Defendant's proffered reason why Ezell did not ask the products question does not make sense.</u>

Defendant's attempted justification as to why Mr. Ezell chose not to include the products question does not make sense. First, Defendant incorrectly argues the *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976), case concerned different products despite both parties offering miniature light bulbs and one of the surveys being referred to as the "bulb survey."  Doc. 94 at ECF pages 10-12 (discussing the facts and survey in *Union Carbide Corp.* case). Second, Defendant argues "a respondent who simply responded 'tequila' (*i.e.*, the related product category) to the question that asked about other 'products' could have been thinking of Casamigos, Cazul, or any other of the dozens or tequila products on the market, not necessarily CLASE AZUL."[14] However, the exact same concern would have been present in the *Union Carbide* case. A respondent identifying one of the plaintiff's flashlights or battery products just as easily could have been referring to products by other battery or flashlight manufacturers.

---

[14] Doc. 101 at ECF page 17.

Regardless, if Mr. Ezell had concerns about the potential for ambiguity that asking the products question would create, he could have implemented a survey design that asked the products question and asked respondents to give more information as to why they responded as they did or to provide other information that would have made the surveys reliable. Or, he could have considered a different methodology that does not create the same potential for ambiguity, such as a *Squirt* format. In the end, it was Mr. Ezell who chose the design, and it is Defendant's burden to demonstrate the chosen methodology is admissible. This, Defendant has not done.

Rather, Defendant argues other courts have accepted Mr. Ezell's impermissible use of other "brands" instead of other "products," citing four purported examples and attaching the underlying expert opinions. Doc. 101 at ECF page 17-18. However, in Defendant's cited cases, the experts' use of "other brands" instead of "other products" was never challenged. *See Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-cv-01253-JLS-ADS, 2022 U.S. Dist. LEXIS 109050, at *14 (C.D. Cal. Jan. 28, 2022) (listing arguments asserted in *Daubert* motion); *Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2021 U.S. Dist. LEXIS 56647, at *13 (E.D. Pa. Mar. 25, 2021) (listing arguments asserted in *Daubert* motion); *E & J Gallo Winery v. Proximo Spirits, Inc.*, No. 1:10-cv-00411 LJO JLT, 2011 U.S. Dist. LEXIS 136053, at *7-8, 10 (E.D. Cal. Nov. 28, 2011) (describing the argument asserted in the *Daubert* motion); *Masterfoods USA v. Arcor USA, Inc.*, 230 F. Supp. 2d 302, 311 (W.D.N.Y. 2002) (opinion does not reference or mention a motion to exclude expert testimony). These cases do not *per se* establish "other brands" instead of "other products" is permissible when no such challenge was ever raised. In other words, Defendant has not demonstrated the Ezell Survey's use of "other brands" instead of "other products" is a reliable implementation of the *Eveready* format.

G.  Defendant's fails to address Ezell's choice of an *Eveready* survey despite the parties' products being proximate in the marketplace.

Turning back to the Hal Poret article, Plaintiff's Motion pointed out Mr. Ezell did not consider the products' proximity when he chose to employ the *Eveready* format and quoted Mr. Poret's concerns about using an *Eveready* when products are proximate. Doc. 94 at ECF pages 25-30. Plaintiff asserted the parties' respective products are proximate and, therefore, use of an *Eveready* design fails **under the exact same** Hal Poret article Defendant uses in an attempt to justify Mr. Ezell's *Eveready* choice. However, Defendant's Response completely fails to address Plaintiff's argument and does not explain why Mr. Poret's article is purportedly correct under Defendant's argument[15] but not correct under Plaintiff's.

Plaintiff presented this Court with significant evidence demonstrating Plaintiff's tequila and Defendant's tequila soda are proximate. *See supra* n.3 (giving location of evidence in the record).[16] This evidence includes, *inter alia*: (1) testimony from the third-party marketing agency Creative State, which Defendant hired to promote its tequila soda, that establishes tequila and tequila soda are in the same product category and they (*i.e.*, Creative State and Defendant) developed a sale pitch specifically targeting tequila drinkers; (2) Defendant's own documents showing Plaintiff's tequila competes with Defendant's tequila products; (3) Defendant's marketing company reporting the actual confusion taking place in the marketplace between Defendant's CASA AZUL mark and Plaintiff's CLASE AZUL mark; and (4) communications from Defendant indicating it is specifically and purposefully targeting Plaintiff's consumers to sell its (Defendant's) products. Doc. 109 at ECF page 15. During the preliminary injunction briefing, Defendant also submitted pictures establishing bottled tequila is typically grouped

---

[15] As discussed, *supra*, Mr. Ezell's survey did not follow Hal Poret's survey in the Poret Article and, therefore, Defendant's "because-Hal-Poret-said-so" basis is flawed. *See* Section II(C.) *supra*.

together in the same area or areas of retail establishments. *See, e.g.*, Doc.22-6 ¶¶ 4-7 (showing pictures and stating "high end liquor" including Plaintiff's tequila was located at the end of the aisle "between Aisles 2 and 3" while other tequila was located "[i]n the open shelving of aisle 2"). However, Mr. Ezell testified he did not consider the products' proximity because he did not need to. Doc. 94 at ECF pages 25-26 (quoting Mr. Ezell's testimony).

> H. Ezell Canned Products survey was not directed to the target group of buyers for Defendant's tequila soda.

Defendant also argues Plaintiff has not argued a "meaningful" difference "between consumers who plan to purchase tequila-based ready-[to]-drink-cocktails from those who plan to purchase other ready-to-drink canned cocktails." Doc. 101 ECF page 20. Yet, Defendant's own marketing strategies show the meaningful difference. As noted, Plaintiff provided evidence Defendant and its marketing agency developed a selling script that purposefully targeted consumers who drink tequila, and they consider tequila and tequila soda as being in the same product category. Doc. 110 at 9. In the words of Defendant's marketing agency, in the selling script "you wouldn't say, 'Hey do you drink a whiskey,' because it's not a whiskey soda. You would say, 'Hey, are you – to [(sic, do)] you like tequila,' because it's a tequila soda." Doc. 109-5 (Deposition of Creative State) at 66:8-19. Defendant's own actions show there is a meaningful distinction between tequila-based ready-to-drink cocktails and non-tequila-based ready-to-drink cocktails. Defendant's argument on this front is baseless.

## III.    CONCLUSION

The Ezell Surveys were designed in such a way where it is impossible to know whether the survey respondents were referring to Plaintiff (or some other brand) when they answered "Casa Azul." Every survey respondent who identified "Casa Azul" and referred to "Casa Azul" as being a tequila brand is suspect because Defendant had not yet launched a tequila at the time

the surveys were conducted. Some may have been referring to Plaintiff, some may have been referring to other tequila brands, and some may have been referring to Defendant. One simply does not know. Under these facts, the Ezell Surveys are unreliable and will not assist the trier of fact. Accordingly, Mr. Ezell's Surveys and his testimony based thereon, respectfully, should be excluded.

**PRAYER**

WHEREFORE, Plaintiff prays for an Order excluding the expert report of Matthew G. Ezell and excluding Mr. Ezell from testifying at trial concerning his report and the Ezell Surveys.

Date: September 29, 2023                Respectfully submitted,

By:/s/*Miguel Villarreal, Jr.*
Miguel Villarreal, Jr.
Attorney-in-Charge
Texas State Bar No. 24042095
S.D. Texas Attorney No. 566669
Miguel.Villarreal@gunn-lee.com
Brandon T. Cook
Texas State Bar No. 24084166
S.D. Texas Attorney No. 3312656
bcook@gunn-lee.com
Edward B. Marvin
Texas State Bar No. 24055917
S.D. Texas Attorney No. 777369
emarvin@gunn-lee.com
Julie P. Bell
Texas State Bar No. 24116091
S.D. Texas Attorney No. 3778079
julie.bell@gunn-lee.com
GUNN, LEE & CAVE, P.C.
8023 Vantage Dr., Suite 1500
San Antonio, Texas 78230
210-886-9500
210-886-9883 Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Miguel Villarreal, Jr.*
Miguel Villarreal, Jr.