United States District Court
Southern District of Texas
**ENTERED**
November 03, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CASA TRADICION S.A. de C.V., § § § Plaintiff, § v. § CIVIL ACTION NO. H-22-2972 § CASA AZUL SPIRITS, LLC, § § Defendant. § § | |

**MEMORANDUM AND ORDER**

This is a lawsuit about tequila. Casa Tradicion produces high-end tequilas under the trademarked name CLASE AZUL, with its lowest-cost option sold in glass bottles for approximately $120, and its highest-cost option sold in hand-painted artisanal ceramic bottles for over $1,500. Casa Azul is a newer entrant into the tequila market. It began selling low-priced canned tequila sodas in 2022, and a year later began selling a higher-priced tequila in frosted glass bottles. Casa Azul sells its products under the trademarked name CASA AZUL. Casa Tradicion sued Casa Azul, alleging infringement of its CLASE AZUL trademark and unfair competition. Casa Tradicion seeks equitable relief, disgorgement, and actual damages. (Docket Entry No. 57).

Casa Azul has moved for partial summary judgment dismissing Casa Tradicion's claims for disgorgement of profits and actual damages. (Docket Entry No. 80). Casa Azul has also moved for a bench trial if the court dismisses the damages claims, leaving only equitable relief. Each side moves to exclude the other's expert witness. Casa Tradicion, the plaintiff, has moved to exclude the defendant's damages expert, Phillip Green; Casa Azul, the defendant, has moved to exclude the plaintiff's damages expert, S. Todd Burchett. Casa Tradicion has moved to exclude the

defendant's survey expert, Matthew Ezell, and Casa Azul has moved to exclude the plaintiff's survey expert, Dr. Isabella Cunningham, and the plaintiff's language expert, Dr. Pablo Requena. (Docket Entry Nos. 88–95).

The court has carefully reviewed the record, including the reports and depositions of Mr. Burchett, Mr. Green, Mr. Ezell, Dr. Cunningham, and Dr. Requena, as well as Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993), and subsequent cases. Based on that review, the court grants the motion to exclude the report and testimony of the plaintiff's expert, Mr. Burchett, making the rebuttal testimony of Mr. Green unnecessary and the motion to exclude it moot. The court denies the motions to exclude the reports and testimony of Dr. Cunningham, Mr. Ezell, and Dr. Requena. Based on the parties' briefing, the summary judgment evidence, the record, and the relevant law, the court grants the defendants' motion for partial summary judgment. The reasons are set out below.

**I.      The Standard for Expert Testimony**

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
    (1) the testimony is based upon sufficient facts or data,
    (2) the testimony is the product of reliable principles and methods, and
    (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). Expert testimony must be both "relevant and reliable" to be

admissible. *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (quoting *Pipitone*, 288 F.3d at 243–44); *Daubert*, 509 U.S. at 589 ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

In making its reliability determination, the court considers the soundness of the general principles or reasoning on which the expert relies and of the methodology that applies those principles to the facts of the case. *Daubert*, 509 U.S. at 594–95; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Several factors guide a district court's inquiry into the reliability of expert testimony, including: "(1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted[.]" *United States v. Perry*, 35 F.4th 293, 329 (5th Cir. 2022) (citing *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 593–94 (1993)). Not all factors apply in every case.

Admissibility of expert testimony is an issue for the trial judge to resolve under Federal Rule of Evidence 104(a). *Daubert*, 509 U.S. at 592–93. The party offering the testimony must prove by a preponderance of the evidence that the expert's opinion is relevant and reliable. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). "A trial court's ruling regarding admissibility of expert testimony is protected by an ambit of discretion and must be sustained unless manifestly erroneous." *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995) (citation omitted).

**II.    The Rule 56 Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th

Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City*

*of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).  But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Jones v. Gulf Coast Rest.  Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III.   Analysis

#### A.  The Expert Testimony

##### 1.  S. Todd Burchett and Phillip Green

The plaintiff, Casa Tradicion, offers the report and testimony of S. Todd Burchett to show that it has suffered actual damages due to the allegedly infringing sales of Casa Azul's tequila products.  The defendant, Casa Azul, asserts that it has no profits, but only the operating losses typical when a company launches a new product.  Casa Azul also disputes Casa Tradicion's assertion, supported by Mr. Burchett's report and testimony, that damages are nonetheless appropriate in the form of a reasonable royalty.  Casa Azul moves to exclude Mr. Burchett's report and testimony on the basis that he failed to properly analyze comparable entities and agreements in determining a royalty payment.  (Docket Entry No. 88-1).

Casa Azul criticizes Mr. Burchett's use of RoyaltySource, a third-party database that collects licensing agreements for use by industry professionals.  (Docket Entry No. 108 at 8).  Mr. Burchett supported his use of the database, explaining that:

> Royalty Source applies a two-tier screening process to ensure the most comprehensive database of royalty payments, without the inclusion of irrelevant records.  Royalty Source prescreens the massive amount of information, selecting only those transactions containing royalty rates (%).  Intellectual property experts perform the second tier.  They check record by record to assure that Royalty Sources' clients receive comprehensive and relevant data.

(*Id.*).  Mr. Burchett contacted RoyaltySource and spoke to an employee to find comparable food and beverage licensing agreements.  RoyaltySource provided a set of 14 agreements, which Mr. Burchett used to form an opinion on a reasonable royalty.  (*Id.* at 9–10).

5

Casa Azul, the defendant, acknowledges that RoyaltySource is an accepted license database and that Mr. Burchett's use of RoyaltySource is not itself objectionable. (Docket Entry No. 129 at 5). Casa Azul instead argues that Mr. Burchett improperly failed to conduct his own analysis of whether the licensing agreements he obtained from RoyaltySource were appropriate for analyzing Casa Azul's business. Casa Azul points to out-of-circuit cases in which the courts excluded reports because the experts did not analyze the similarities between the license agreements sent by RoyaltySource and the products at issue, and instead relied solely on RoyaltySource's analysis. *Meridian Mfg., Inc. v. C & B Mfg., Inc.*, 340 F. Supp. 3d 808, 849 (N.D. Iowa 2018); *see also Atlas IP, LLC v. Medtronic, Inc.*, No. 13-CIV-23309, 2014 WL 5741870, at *6 (S.D. Fla. Oct. 6, 2014) (excluding an expert report because the expert used the database RoyaltyStat to determine a royalty rate without reviewing the underlying agreements). Mr. Burchett similarly did not analyze the license agreements he obtained from RoyaltySource or explain why they were sufficiently similar to the agreement he asserted Casa Azul should have entered into with Casa Tradicion. Instead, Mr. Burchett admitted in his deposition that he relied entirely on RoyaltySource's judgment of similarity and comparability rather than reviewing the agreements himself. (Docket Entry No. 129 at 5).

Casa Tradicion, the plaintiff, points to *PerdiemCo, LLC v. Industrack LLC*, No. 15-CV-726, 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016), in which the court recognized RoyaltySource as a reliable source of licensing agreements, to show that Mr. Burchett's methodology was permissible. In *PerdiemCo*, the court held that arguments about the comparability of the RoyaltySource licenses went to the weight, rather than the admissibility, of the evidence. *Id.* at *3. But *PerdiemCo* does not support Casa Tradicion's position. In that case, the plaintiff's expert sent the agreements to a technical expert to analyze the comparability of the RoyaltySource-

6

provided agreements to the agreement allegedly appropriate for the disputed product, and the defendant challenged the accuracy of the expert's analysis. *Id.* at *4. Here, Mr. Burchett conducted no independent comparability analysis, as was his responsibility as an expert. Because Mr. Burchett's expert opinion is based on an analysis conducted entirely by a third party, his opinion is not sufficiently reliable. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999) ("[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible[.]"). The court grants Casa Azul's motion to exclude Mr. Burchett's report and testimony in support of Casa Tradicion's damages claim.

During argument on the motions on October 24, 2023, counsel for Casa Azul stated that if Mr. Burchett's expert testimony was excluded, there would be no need to use the report or testimony of its rebuttal expert, Phillip Green. The motion to exclude the report and testimony of Phillip Green is moot.

### 2. Dr. Isabella Cunningham

Casa Tradicion offers the report and testimony of Dr. Isabella Cunningham, a professor in Advertising and Public Relations at the University of Texas at Austin, (Docket Entry No. 110 at 9), who conducted two surveys that she asserts showed a likelihood of confusion between the Casa Tradicion products marketed under CLASE AZUL, and Casa Azul's products marketed under CASA AZUL. (*Id.* at 6). Casa Azul argues that Dr. Cunningham's surveys are inadmissible because she improperly used the *Squirt* methodology and used improper questions, populations, and coding. (Docket Entry No. 95-1 at 6).

"When conducting a survey using the *Squirt* format, consumers are first shown the plaintiff's product or mark, and later separately shown an array of other products or marks that includes the accused infringing one and then asked if they think anything from the array is

7

associated with the first image that they saw." *Luckenbach Texas, Inc. v. Engel*, No. 19-CV-00567, 2022 WL 16857410, at *2 (W.D. Tex. Oct. 13, 2022). Although some courts have rejected the *Squirt* methodology as improperly leading, many courts, including several in this circuit, have admitted expert reports using the methodology, leaving any weaknesses to be exposed by cross-examination and the weight to be determined by the factfinder at trial. *Id.* (collecting cases).

Casa Azul argues that the *Squirt* methodology is not appropriate here because the parties' tequila products are not proximate in the marketplace, a requirement for a *Squirt* survey to be valid. (Docket Entry No. 95-1 at 12). Casa Azul cites to *Joules Ltd. v. Macy's Merch. Grp. Inc.*, 15-CV-3645 KMW, 2016 WL 4094913 at *9 (S.D.N.Y. Aug. 2, 2016), *aff'd*, 695 F. App'x 633 (2d Cir. 2017), in which the court held that a *Squirt* survey used when "the products at issue are not sold in the same stores . . . may over-estimate confusion by forcing consumers to consider the marks in close proximity in a way they would not in the marketplace." But even though the CLASE AZUL and CASA AZUL products may not be displayed side-by-side in stores and have distinct packaging and appearance, the products are likely to be sold in the same stores. The plaintiff, Casa Tradicion, argues that the products are "competitively proximate" and points to documents produced during discovery that shows Casa Azul marketing specifically to likely tequila consumers, including Casa Tradicion's customers, and viewing the products as competitive. (Docket Entry No. 110 at 13).

Other courts have held that disputes over whether products "are direct competitors and exist proximately in the market . . . are appropriate areas for cross-examination, but do not justify exclusion[.]" *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, No. 19-CV-696, 2020 WL 710198, at *3 (W.D. Tex. Feb. 12, 2020). This court agrees. The parties here market to different, but related, groups of tequila consumers. The plaintiff, Casa Tradicion, sells high-cost, luxury tequilas

8

in either clear glass bottles or handcrafted ceramic containers that emphasize the artisanal and cultural aspects of tequila and its place in Mexican culture. The defendant, Casa Azul, sells low-cost canned tequila sodas and relatively low-cost bottled tequila in frosted bottles. Some of Casa Azul's highest-cost bottled tequilas may overlap in price with Casa Tradicion's lowest-cost CLASE AZUL tequila, although the packaging is different. Whether the tequila products are sufficiently and confusingly similar to make the survey's results reliable goes to the weight, rather than the admissibility, of the survey. Nor does Casa Azul's general argument that Dr. Cunningham altered the questions of the *Squirt* survey support exclusion. "The fact that an expert's survey may be imperfect or conducted in an alternative fashion does not automatically render the survey unreliable or its methodology so flawed as to permit its exclusion under *Daubert*." *Maxell, Ltd. v. Apple Inc.*, No. 19-CV-00036-RWS, 2020 WL 8269548, at *17 (E.D. Tex. Nov. 11, 2020).

Casa Azul also argues that the Word Mark Survey should be excluded because it failed to emulate marketplace conditions, contained coding issues, and deviated from the original *Squirt* survey question format. (Docket Entry No. 95-1 at 18–21). In the Word Mark Survey, Dr. Cunningham showed survey participants the CLASE AZUL and CASA AZUL labels in "plain black-and-white text without any other context[.]" (*Id.* at 15). Casa Azul argues that while such surveys are admissible before the Trademark Trial and Appeal Board, that is different from admissibility in litigation. Multiple courts have held that this type of survey cannot be offered as evidence of dilution of a mark, because the labels are stripped of context. *See, e.g.*, *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1146–47 (10th Cir. 2013).

In response, Casa Tradicion, argues that the labels may be "depicted on menus or in other ordering formats where they are separated from the product packaging[.]" (Docket Entry No. 110 at 27). However, this is contradicted by Dr. Cunningham's testimony that she is "not aware of any

9

situation where a consumer would encounter the marks in the marketplace" as plain text without context. (Docket Entry No. 95-1 at 15). Dr. Cunningham's Word Mark Survey fails to emulate marketplace conditions and must be excluded. Casa Azul's objections to Dr. Cunningham's Image Survey go to the weight to be given the survey, not its admissibility. Casa Azul's motion to exclude Dr. Cunningham's report and testimony is denied, subject to the limitation that Dr. Cunningham may testify only as to the Image Survey.

### 3. Matthew Ezell

Casa Azul offers the report and testimony of Matthew Ezell, who conducted two surveys measuring the likelihood of confusion between the parties' products. (Docket Entry No. 94 at 5). Casa Tradicion moves to exclude Mr. Ezell's survey, arguing that he improperly used the *Eveready* methodology and incorrectly coded responses. (*Id.* at 6). First, Casa Tradition argues that the *Eveready* methodology is appropriate only when the survey participants are aware of the senior user's brand and can identify the brand from memory, and claims that Mr. Ezell did not determine if this was the case. Second, Casa Tradicion argues that participants who answered "Casa Azul" in the survey may have been referring to CLASE AZUL, not CASA AZUL, and so these participants' responses were improperly coded.

Casa Azul has provided multiple cases showing that the *Eveready* survey format does not require a strong or top-of-mind senior mark. *See MGA Ent. Inc. v. Harris*, No. 20-CV-11548, 2022 WL 3013218, at *4 (C.D. Cal. July 7, 2022); *Great Am. Rest. Co. v. Domino's Pizza LLC*, No. 07-CV-52, 2008 WL 7440300 (E.D. Tex. Apr. 21, 2008). These courts admitted the surveys in question but noted that the lack of a strong senior mark could affect the weight given to a survey. Casa Tradicion argues that in cases in which the mark is not top of mind, the *Eveready* survey method is not the gold standard or may yield a less conclusive result. (Docket Entry No. 125 at

10

10). This argument goes to the weight of the evidence, not the admissibility. Similarly, the argument that survey participants may have meant CLASE AZUL, not CASA AZUL, is not proof of a coding error, because Casa Azul had a tequila soda at the time, and the respondents could have been referring to Casa Azul's presence in the broader tequila marketplace.

Casa Tradicion's general argument that Mr. Ezell altered some of the standard questions of the *Eveready* survey to ask about associated brands rather than associated products also does not support exclusion. As with Dr. Cunningham's Image Survey, "[t]he fact that an expert's survey may be imperfect or conducted in an alternative fashion does not automatically render the survey unreliable or its methodology so flawed as to permit its exclusion under *Daubert*." *Maxell*, 2020 WL 8269548, at *17. At trial, Casa Tradicion may use cross-examination and argument to explore issues with Mr. Ezell's testimony and survey, and the factfinder will decide the weight it deserves. The motion to exclude it is denied.

### 4. Dr. Pablo Requena

Dr. Requena has a doctorate in Spanish and Language Science and is a professor of Hispanic Linguistics at the University of Texas at San Antonio. (Docket Entry No. 105 at 5). Casa Azul objects to Dr. Requena's opinions on the basis that he is a native Spanish speaker and that he used rules of Spanish linguistics in completing his analysis, even though the target consumers of the tequila products are English speakers. (Docket Entry No. 92).

Casa Tradicion has two main arguments in response. First, it points out that a "large minority of the relevant consumers" speak Spanish, citing Census Bureau data. (Docket Entry No. 105 at 11). Second, it argues that Dr. Requena has taught Spanish to English, non-native speakers, including "courses specifically focused on helping native English speakers pronounce the Spanish language," (*id.* at 9), and that he has reviewed literature on the ability of native English speakers

11

to pronounce sounds correctly in a variety of other languages. Dr. Requena has also viewed videos of people pronouncing the relevant product names on YouTube, including native English speakers. (Docket Entry No. 92-1 at 12).

Casa Azul argues that Dr. Requena did not use any scientific or reliable methodology when finding the YouTube videos and used only a small number of data points. (*Id.* at 12–13). The court agrees that if Dr. Requena's opinion was based on YouTube videos alone, the sample size may be impermissibly small. However, Dr. Requena also relies on 13 years of teaching Spanish to English speakers. (Docket Entry No. 105 at 5). The Fifth Circuit has "upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation[.]" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). Casa Azul's objections to Dr. Requena's conclusions go to the weight to be given his report and testimony, but exclusion is not appropriate.

## B. The Motion for Summary Judgment

### 1. Disgorgement

"Section 35 of the Lanham Act allows monetary recovery for certain Lanham Act violations in the form of actual damages, disgorgement, and costs. A plaintiff's entitlement to disgorged profits is assessed based on the equities of the case and does not automatically follow from liability." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875 (5th Cir. 2019). "In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Casa Azul moves to dismiss Casa Tradicion's disgorgement claim on the basis that there are no profits to disgorge. (Docket Entry No. 80-1 at 10). Casa Azul asserts that it has made less than $1 million in revenues from its tequila soda and that the cost of production has exceeded the

revenues. (*Id.*). In addition, Casa Azul claims it has operating costs of over $8 million related to the tequila soda, including marketing, administrative expenses, and general overhead. (*Id.* at 10–11). In support, Casa Azul produces a declaration of its CEO and financial statements showing that it has operated at a significant loss. (Docket Entry No. 80-4).

Casa Tradicion makes several arguments in its opposition to dismissal, including challenging the validity of Mr. Green's report and testimony on Casa Azul's operating expenses and costs and raising issues with Casa Azul's financial calculations. Casa Azul responds that Mr. Green's report and testimony are submitted in rebuttal to Casa Tradicion's expert report and testimony, which the court has excluded. *See supra* section III.A.1.

Casa Tradicion correctly points out that Mr. Green's initial report improperly included costs of the present litigation in its general operating costs. (Docket Entry No. 100 at 14). "[C]laims of deductions of legal fees [related to this suit], as the district court noted, [are] not . . . allowable in any case" in a Lanham Act suit for disgorgement. *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir. 1980). Casa Azul acknowledged the error at argument on this motion and corrected it, and has shown in briefing that these costs are minor and do not offset the millions of dollars in loss. (Docket Entry No. 117 at 12 n.4).

Casa Tradicion also argues that Casa Azul has not provided particularized information as to its production costs and has not accounted for employees who split their time between Casa Azul and other business ventures. (Docket Entry No. 100 at 15). Casa Azul counters that it has produced its general ledger and financial packages with line-item costs; that it has offered testimony about the costs for its tequila soda; and that it accounted for the split-time employees by allocating only a percentage of their salaries as costs to Casa Azul based on the time they spent working at Casa Azul. (Docket Entry No. 117 at 8–10).

The Fifth Circuit has previously upheld deductions of costs for the purposes of disgorgement based on "[the defendant's] tax return and testimony by [its] CEO." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 337 (5th Cir. 2008). The testimony and declaration of Casa Azul's CEO, along with the general ledger and line-item financial records, are sufficient to show that Casa Azul has no profits to disgorge at this time. Casa Azul has shown that its production costs have exceeded its revenues, and that it is operating at a significant loss. Casa Tradicion has not submitted or pointed to evidence supporting its claims that Casa Azul's revenues exceeded its costs, or otherwise shown that Casa Azul's documented loss of over $8 million is so inaccurate that the company in fact had a net profit.

### a. Actual Damages

Casa Tradicion seeks actual damages based on the loss of a reasonable royalty, as well as damage to its business reputation and lost sales. (Docket Entry No. 100 at 17). Casa Azul moves to dismiss on the grounds that Casa Tradicion has not shown either a basis to impose a reasonable-royalty measure of damages or show that it has been damaged as a result of Casa Azul's marketing of its tequila products. (Docket Entry Nos. 80-1 at 12–13).

Casa Tradicion presents S. Todd Burchett as its expert, arguing that he has identified a reasonable royalty that Casa Azul would have paid Casa Tradicion had the parties negotiated such an agreement. However, as discussed above, Mr. Burchett did not conduct any independent examination of the licensing agreements he relied on in coming to his conclusions. In addition, a reasonable royalty is not an appropriate remedy for the trademark infringement alleged. The Fifth Circuit has "permitted trademark infringement damages on the basis of the royalty rate normally charged for licensing the unauthorized use of the mark, on the logic that the plaintiff sustained damages equal to the profit they could have made from such a license." *Streamline Prod. Sys., Inc.*

14

*v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017).  The *Streamline* court added that "[u]sually, when the courts have awarded a royalty for past acts of infringement, it was for continued use of a mark after a license ended and damages were measured by the royalty rate the parties had agreed on." *Id.* (quoting *Choice Hotels Int'l, Inc. v. Patel*, 940 F.Supp.2d 532, 546 (S.D. Tex. 2013); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:85 (4th ed. 2013)).  Reasonable royalty as a "measure of damages is . . . especially appropriate when the parties had a prior licensing agreement." *Choice Hotels Int'l, Inc. v. Gosla Fam. Tr.*, No. 18-CV-00648, 2022 WL 4295362, at *7 (W.D. Tex. Sept. 16, 2022) (citing *Choice Hotels Int'l, Inc. v. Bhakta*, No. 11-CV-00411, 2013 WL 1403526, at *7 (S.D. Tex. Apr. 5, 2013)).

The Fifth Circuit has not ruled on whether the reasonable royalty measure can be used when no prior licensing agreement exists between the parties.  The court held, however, any "royalty-based damages award must be rationally related to the scope of the defendant's infringement[,]" and reversed the jury's royalty award on the basis that the award was based solely on "[the plaintiff's] expert's testimony" and not on "the portion of [the defendant's] profits that were attributable to its infringing use," if any. *Streamline Prod. Sys., Inc.*, 851 F.3d at 461.  There is no basis to award a reasonable royalty here.  First, there is no prior licensing agreement that might create a presumption of the appropriateness of a reasonable royalty.  Second, Casa Tradicion has offered Mr. Burchett's report as the only evidence supporting a reasonable royalty and has not established a basis for a reasonable royalty award on the basis of Casa Azul's profits attributable to its alleged trademark infringement.

Casa Tradicion also argues that it is entitled to actual damages because its "sales have decreased since [the] Defendant began selling its CASA AZUL tequila products." (Docket Entry No. 100 at 20).  Casa Azul responds that a decline in Casa Tradicion's sales around the time that

Casa Azul began selling its tequila products is not evidence supporting lost revenues or lost profits, because Casa Tradicion has not shown a causal connection between its sales decline and the alleged infringement. In support, Casa Azul points to testimony by Casa Tradicion's founder and CEO, Arturo Lomeli, that "he was not aware of 'any financial damage that [Casa Tradicion] ha[d] suffered as a result of [Casa Azul's] alleged infringement.'" (Docket Entry No. 80-1 at 12). Casa Azul also points to testimony by Juan Sanchez, Casa Tradicion's President and Chairman of the Board, and its Rule 30(b)(6) corporate representative, that Casa Tradicion had no evidence that its profits or sales have declined as a result of Casa Azul's tequila products.

Casa Tradicion responds that its corporate officer's "lack of knowledge regarding lost sales is not dispositive of actual damages[,]" (Docket Entry No. 100 at 20), citing *BMC Software, Inc. v. Baker Hughes, LLC*, No. 19-CV-4810, 2022 WL 4390612 (S.D. Tex. Aug. 24, 2022), *report and recommendation adopted*, 2022 WL 4389524 (S.D. Tex. Sept. 22, 2022). In *BMC Software*, the court held that a corporate representative's lack of awareness during a deposition about harm to the corporation was not a concession of lack of damages when the individual was "deposed prior to the completion of any expert report on damages and explicitly deferred the issue of damages to the findings of the experts and" another corporative representative with more knowledge on the topic. *Id.* at *3. In several other cases in this circuit, the testimony of top corporate officials that they could not quantify damages has been dispositive evidence that there are no actual damages. *See Camowraps, LLC v. Quantum Digital Ventures LLC*, 74 F. Supp. 3d 730, 741 (E.D. La. 2015) (the "testimony of plaintiff's president that he has not quantified any damages suffered by plaintiff as a result of the alleged infringement" supported the finding that there were no actual damages); *EsNtion Recs., Inc. v. TritonTM, Inc.*, No. 07-CV-2027, 2009 WL

16

3805827, at *7 (N.D. Tex. Nov. 13, 2009) (neither the president of the corporation nor other experts could identify or quantify specific damages based on allegedly infringing songs).

In addition to the inability of Casa Tradicion's corporate representatives to identify or quantify actual damages allegedly caused by Casa Azul, Casa Tradicion has not offered any expert testimony calculating lost sales attributable to Casa Azul's sale of tequila products or demonstrating a causal link between Casa Tradicion's decline in sales and Casa Azul's sales of allegedly infringing products. Casa Tradicion has not presented sufficient facts to support a reasonable finding of actual damages caused by Casa Azul's alleged infringement. The court grants Casa Azul's motion for summary judgment dismissing Casa Tradicion's claim for actual damages.

### C. The Jury Trial

In addition to disgorgement and actual damages, Casa Tradicion seeks an injunction against Casa Azul to cease using the CASA AZUL name and requiring it to abandon its infringing trademarks and cancel its trademark registration. (Docket Entry No. 57). These are equitable claims that do not entitle Casa Tradicion to a jury trial. *Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 121–22 (5th Cir. 1973) ("The right of trial by jury does not extend to cases historically cognizable in equity . . . [the plaintiff's] action for injunctive relief relating to trademark infringement and unfair competition was equitable in nature."); *see Le-Vel Brands, LLC v. DMS Nat. Health, LLC*, No. 20-CV-398, 2022 WL 949955, at *1 (E.D. Tex. Mar. 28, 2022); *New Century Fin., Inc. v. New Century Fin. Corp.*, No. 04-CV-437, 2005 WL 8156726, at *1 (S.D. Tex. Dec. 13, 2005); *Sanijet Corp. v. Jacuzzi Inc.*, No. 01-CV-0897, 2002 WL 1398546, at *2 (N.D. Tex. Feb. 14, 2002).

Because the court grants summary judgment dismissing the claims for disgorgement in addition to actual damages, it does not reach the question of whether a claim for disgorgement entitles a plaintiff to a jury trial. Only equitable relief remains available. The demand for a jury trial is stricken.

## IV. Conclusion

Both parties have moved to seal multiple expert reports and the summary judgment briefing for containing "commercially sensitive" information. While both parties have been overzealous about sealing, information including overall profits and losses, production costs, and inventory variance is commercially sensitive, and sealing is appropriate. The parties are advised in the future to move to seal in the document itself to avoid further burdening the docket. The motions to seal, (Docket Entry Nos. 85, 86, 93, 98, 114, 115, 116, 130, 131), are granted.

The motion to exclude the testimony and report of Mr. Burchett is granted. The motion to exclude Mr. Green's rebuttal testimony and report is moot. The motion to exclude the testimony and reports of Dr. Requena, Mr. Ezell, and Dr. Cunningham are denied, subject to the limitations discussed above. Casa Azul's motion for partial summary judgment and to strike the jury demand is granted.

SIGNED on November 3, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge